**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civ. No. 07-cv-02155 (ESH)** |
| | ) | |
| **$9,436.00 IN U.S. CURRENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |
| | ) | |
| **RITA THOMPSON-JOYNER,** | ) | |
| | ) | |
| **Claimant.** | ) | |
| _____ | ) | |

**GOVERNMENT'S OPPOSITION TO CLAIMANT'S**
**MOTION FOR STAY OF DISCOVERY ON THE MERITS**
**PENDING RESOLUTION OF MOTION TO DISMISS**

The United States of America, by and through the United States Attorney for the District

of Columbia, hereby opposes claimant Rita Thompson-Joyner's Motion for Stay of Discovery on

the Merits Pending Resolution of Motion to Dismiss.  Movant asserts that some of plaintiff's

interrogatories served pursuant to Rule G(6), Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions (specifically Interrogatories Nos. 9 and 10) are not related to

her identity or relationship to the defendant property.  As a result, she moves to stay answering

those interrogatories until after the Court decides her motion to dismiss.[1]

In essence, movant asks the Court to decide her dismissal motion before she has shown

---

[1] Objections to interrogatories are supposed to be set forth in answers to the interrogators.
That way, courts are not burdened with unnecessary motions.  The party that propounded the
interrogatory, after considering the basis for any asserted objection, can decide whether it is
appropriate to notify the objector of the intent to move the Court to compel the objector to
answer.  See Fed. R. Civ. P. 33(b), 37(a); Local Rule 7(m).

she has standing to make that motion.  Granting such a motion would flout the constitutional

"case or controversy" doctrine and abrogate the federal rules governing this forfeiture action.

      This is a civil action *in rem* to forfeit cash that police seized from an indicted drug-

dealer's one bedroom apartment.  That man has since died.  The dead man's sister (movant) filed

an unverified claim for the $9,436.00 in U.S. Currency ("defendant currency") which, because it

was not verified, is itself insufficient to establish so-called "statutory" standing.[2]  But, to further

test the sister's unverified claim and the extent to which she also might lack constitutional

standing to maintain a claim here, plaintiff sent her Rule G(6) interrogatories.  Now, the sister

seeks to defer answering some of these interrogatories until after the Court rules on her motion to

dismiss.  But, the sister has no right to call on the Court's resources to decide her motion to

dismiss first.  She must show that she has an interest in the cash found in her late brother's

apartment, and that her interest is one that the federal forfeiture laws permit her to assert

(presumably for him), before the Court must decide what inferences can fairly be drawn from

large amounts of cash found in a drug dealer's apartment.

      All of the Rule G(6) interrogatories served on movant are relevant to her statutory and

Article III standing.  The interrogatories relate to her identity or relationship to the defendant

currency.  Every claimant must establish both statutory standing and Article III standing before

the Court can consider a motion to dismiss and Rule G, which also dictates the order in which a

civil forfeiture action proceeds, prohibits decision on a motion to dismiss before a movant

---

      [2] Rule G requires all claims to be verified.  <u>See</u> <u>also</u> 18 U.S.C. § 983(A)(2)(C)(iii) ("A claim
shall-- (iii) be made under oath, subject to penalty of perjury.")

establishes standing to intervene in a forfeiture action.[3]  For the reasons discussed herein,

movant's motion is without merit and should be summarily denied.

## I.    BACKGROUND

### A.    Factual Background

On June 12, 2007, a federal grand jury handed up an indictment charging that between

August 1, 2005 and June 11, 2007, Daniel M. Thompson ("Mr. Thompson") and others were

involved in an unlawful conspiracy to distribute and possess with intent to distribute one

kilogram or more of phencyclidine and one kilogram or more of heroin, in violation of 21 U.S.C.

§ 846.[4]  On June 19, 2007, law enforcement officers executed a search warrant at Mr.

Thompson's one bedroom apartment.  Thompson, the lessee of the apartment, was the only

person in the apartment when law enforcement executed the search warrant.

Police seized a total of $9,436.00 in U.S. currency, including $7,000.00 from an

entertainment center in the only bedroom.  In the entertainment center police also found a ziplock

bag containing heroin, next to an envelope containing some of the cash.  The bedroom also

contained heroin, oxycodone, marijuana, and two digital scales.  Officers recovered another

scale, in the kitchen, and other drug paraphernalia used to package illegal substances, including

small ziplock bags and razor blades.  Mr. Thompson had no lawful employment.

---

[3] Plaintiff may file a motion to strike claimant's claim depending upon the claimant's answers to its Rule G(6) interrogatories.  Plaintiff does not anticipate conducting additional discovery before filing its own dispositive motion.  Therefore, there is no need to "stay discovery on the merits."

[4] All of the facts set forth in this section of plaintiff's opposition are set forth in the Verified Complaint, Document No. 1, of the electronically-filed documents in the instant matter.

### B.      Procedural Background

On November 29, 2007, plaintiff filed a Verified Complaint for Forfeiture *In Rem* against the defendant, $9,436.00 in U.S. Currency.[5]  See Document No. 1.  On January 16, 2008, Ms. Thompson-Joyner, *pro se*, filed an unverified claim to the defendant currency.  See Document No. 3.  In her "claim," Ms. Thompson-Joyner stated that she was filing a claim "on behalf of my recently deceased brother, Daniel Maurice Thompson."  Id. at ¶ 1.  Ms. Thompson-Joyner said that on August 28, 2007, her brother gave her a general power of attorney to pursue his effort to recover the seized funds.  No other individual has filed a claim in this matter (and the time for filing claims has expired).

On July 2, 2008, counsel, Elizabeth W. Newsom, Esquire and Ann M. Mason, Esquire, appeared on behalf of Ms. Thompson-Joyner.  See Document No. 4.  On July 22, 2008, through her new counsel, Ms. Thompson-Joyner filed a Motion to Dismiss Complaint.  In her motion, Ms. Thompson-Joyner alleges that the Complaint does not meet a heightened pleading standard that she says this Court should demand.  See Document No. 5.

In order to explore whether Ms. Thompson-Joyner's "claim" was deficient for reasons other than its lack of verification, plaintiff served special interrogatories on Ms. Thompson-Joyner's counsel and, to alert the Court as to the change in procedural posture, filed a Notice of Service of Special Interrogatories Upon Claimant and Deferral of Government's

---

[5] Copies of the Complaint and Warrant of Arrest *In Rem* issued by the Clerk of the Court were served upon the defendant currency on December 10, 2007.  See Document No. 2.  Additionally, copies of the Complaint and Warrant of Arrest *In Rem* were sent to all known interested parties, via the United States Postal Service.  In full compliance with applicable Local Rules and Rules of Procedure, notice of seizure was published in THE WASHINGTON TIMES for three consecutive weeks, on April 6, 13, and 20, 2008.

4

Response to Claimant's Motion to Dismiss Complaint.  <u>See</u> Document No. 6.  On August 20,

2008, Ms. Thompson-Joyner filed an Unopposed Motion for Extension of Time to Respond to

Government's First Set of Special Interrogatories, and Motion for Stay of Discovery on the

Merits Pending Resolution of the Motion to Dismiss.  <u>See</u> Document no. 7.  On August 25, 2008,

the Court granted Ms. Thompson-Joyner's Unopposed Motion for Extension of Time, but

"defer[red] ruling on the Motion of Claimant Rita S. Thompson-Joyner for a Stay Discovery on

the Merits Pending Resolution of the Motion to Dismiss until after the parties' have completed

briefing on the motion."  <u>See</u> August 25, 2008 Minute Order.

## II.    <u>ARGUMENT</u>

Ms. Thompson-Joyner alleges that she should not have to answer certain of plaintiff's

First Set of Interrogatories by asserting that they do not relate to her relationship to the defendant

currency and because "[t]he government ought not be permitted to conduct discovery on the

merits . . ."  <u>See</u> Document No. 7 at p. 5.  Claimant asserts that Interrogatories Nos. 9 and 10 (and

possibly more) request information beyond that allowed to be asked by Rule G.  <u>Id.</u> at p. 6 and

n.1.  Ms. Thompson-Joyner's allegations are meritless.  Interrogatory No. 9 asks Ms.

Thompson-Joyner to identify whether Mr. Thompson had a spouse or children at the time of his

death.[6]  Interrogatory No. 10 asks her to describe the source of the defendant currency.[7]  These

---

[6] Interrogatory No. 9:  "Identify whether Mr. Thompson had a spouse and/or children at the time of his death.  If so, provide their names, ages, relationship, and current contact information, including addresses."

[7] Interrogatory No. 10:

State all facts setting forth the source(s) of the defendant currency.

a.    If any of the defendant currency was from Mr. Thompson's employment,

interrogatories plainly fall within the parameters of Supplemental Rule G because they relate to

Ms. Thompson-Joyner's, or her brother's, identity and relationship to the defendant currency.

### A.    Standing is a Threshold Issue

Civil forfeiture is an *in rem* proceeding against property.  But, although the property is the

defendant in such cases, it is inanimate and cannot defend itself.  Instead, those persons who have

an interest in the defendant property, and who wish to challenge the forfeiture, must come

forward to properly intervene in the *in rem* proceeding.  "Civil forfeiture actions are brought

against property, not people.  The owner of the property may intervene to protect his interest."

United States v. All Funds in Accounts (Banco Espanol de Credito), 295 F.3d 23, 25 (D.C. Cir.

2002).  "Because civil forfeiture is an *in rem* proceeding, the property subject to forfeiture is the

---

state when and where he was employed.  Include in your response when the
defendant currency was obtained (i.e., weekly, monthly), the amount obtained in
each instance, and from where the currency was obtained (i.e., bank account).

b.    If any of the defendant currency was derived from funds from a bank
account, state the amount of those funds, the name of the financial institution, the
name of the account holder, the account number, the date on which the funds were
withdrawn from the account and when they were provided to Mr. Thompson.

c.    If any of the defendant currency was accumulated from some source other
than from employment, state with specificity the amount of that currency, the
source of the currency, and when and how the currency was accumulated.

d.    If any of the defendant currency was derived from third parties, who were
those third parties (include their names and current contact information), what
amount of the defendant currency was derived from third parties, and when and
how did those third parties provide Mr. Thompson with the defendant currency.

e.    If any of the defendant currency was derived from transactions with third
parties, what was the business nature of each such transaction?

f.    If any of the defendant currency was derived from transactions with third
parties, what obligations did Mr. Thompson have to each such third party?

defendant.  Thus defenses against the forfeiture can be brought only by third parties, who must intervene."  United States v. One-Sixth Share of James J. Bulger in [Lottery Proceeds], 326 F.3d 36, 40 (1st Cir. 2003).

Not everyone can properly intervene in order to defend a forfeiture action.  In order to defend a civil forfeiture action, a would-be intervenor must first establish that he or she has a sufficient interest in the defendant property to challenge its forfeiture.  In short, a prospective intervenor must establish that he or she has both statutory standing and Article III (case-or-controversy) standing.  See United States v. $487,825.00 in U.S. Currency, 484 F.3d 662, 664 (3d Cir. 2007).  "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution."  Cassella, Stefan D., *Asset Forfeiture in the United States: A Treatise on Forfeiture Law*, § 9-4, at 22-23 (2006).

A claimant's standing is a threshold determination.  See United States v. $557,933.89, 287 F.3d 66, 78 (2d Cir. 2002).  "The function of standing in a forfeiture action is therefore truly threshold only – to ensure *that the government is put to its proof only where someone with a legitimate interest contests the forfeiture*."  Id. at 79 (emphasis added).  "Importantly, it is the claimant's burden to establish standing."  U.S. v. $543,190.00 in U.S. Currency, 535 F. Supp.2d 1238, 1249 (M.D. Ala., 2008) (citations omitted).  See also United States v. Cambio Exacto, S.A., 166 F. 3d 522, 526 (2d Cir. 1999).  "A claimant need not prove the merit of his underlying claim.  He must, however, *be able to show at least a facially colorable interest in the*

*proceedings sufficient to satisfy the case-or-controversy requirement* and the prudential

considerations defining and limiting the role of the court." <u>Kadonsky v. United States</u>, 216 F.3d

499, 508 (5th Cir. 2000) (quoting United States v. $9,041,598.68, 163 F.3d 238, 245 (5th Cir.

1998) (emphasis added).  For this reason, only "[a] claimant who establishes standing to contest

forfeiture may move to dismiss the action[,]" <u>see</u> Rule G (8)(b), and "[t]he government need not

respond to a claimant's motion to dismiss the action under Rule G(8)(b) until 20 days after the

claimant has answered" special interrogatories that test her standing.  Rule G(6)(c).

### B.    Plaintiff's Rule G(6) Interrogatories were Appropriate

On July 30, 2008, plaintiff sent claimant Rule G(6) special interrogatories regarding her

"identity" and "relationship" to the defendant currency.  <u>See</u> Document No. 7, Exhibit No. 2.

These interrogatories were designed to gather sufficient information to assess whether claimant

possessed Article III standing to intervene on behalf of the defendant currency, and thus, have

standing to move to dismiss.  Claimant cites no legal authority which prohibits plaintiff

requesting information about the source of subject currency or information about individuals who

may have claims superior to claimant.

Article III standing can be demonstrated by showing ". . . a legally cognizable interest in

the property that will be injured if the property is forfeited to the government.  It is this claim of

injury that confers upon the claimant the requisite 'case or controversy' standing to contest the

forfeiture." <u>United States v. $38,000 in U.S. Currency</u>, 816 F.2d 1538, 1543-44 n.12 (11th Cir.

1987) (citation omitted).   ". . . [B]are assertion of ownership of the *res*, without more, is

inadequate to prove an ownership interest sufficient to establish standing." <u>United States v.</u>

<u>$38,570 United States Currency</u>, 950 F.2d 1108, 1112 (5th Cir. 1992).  ". . . [W]here a mere

custodian has possession, it is only a 'naked claim of possession' and does not thereby impart Article III standing.  He or she has not demonstrated injury sufficient to satisfy the Article III standing test."  United States v. Cambio Exacto, S.A., *supra*, 166 F. 3d at 527 (citation omitted).  "This requirement derives from a common concern for "straw man" transfers of property from criminal defendants to third parties and subsequent assertions of ownership by claimants who lack a legal interest in the property subject to forfeiture."  United States v. $515,060.42, 152 F.3d 491, 498 (6th Cir. 1998) (citations omitted)

We are aware of no case in which a criminal defendant was permitted to give another person a power of attorney to maintain a forfeiture challenge.  Rather, courts have scrutinized claims cautiously, even finding that something more than mere possession may be necessary to confer standing.  "When confronted with mere physical possession of property as a basis for standing, we require some explanation or contextual information regarding the claimant's relationship to the seized property."  United States v. $515,060.42, *supra*, 152 F.3d at 498 (citations omitted).  "The assertion of simple physical possession of property as a basis for standing must be accompanied by factual allegations regarding *how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property*."  Id. (emphasis added).  "Additional evidence sufficient to support a claim of ownership can include evidence of actual title, possession or other evidence of dominion or control that indicates the existence of some financial stake in the *res*."  Lopez v. United States, 2006 WL 2788999 (D.D.C. Sept. 26, 2006) (citing United States v. Funds From Prudential Securities, 300 F. Supp.2d 99, 107 (D.D.C. 2004).  Thus, when the defendant property is currency, which is fungible, even the assertion of mere possession has been found to be

9

insufficient to confer standing.

Courts do not hesitate to enforce standing, and inquiries into it. For example, a claimant in a New Jersey civil forfeiture action who moved to dismiss was served with Rule G(6) interrogatories. See United States v. $39,577, more or less, in U.S. Currency, 2008 WL 2901318 (D.N.J., May 21, 2008). When the claimant failed to answer some of the interrogatories, the government filed a motion to strike his claim or alternatively to compel discovery. Id. The court found an interrogatory which asked claimant to, "identify in detail how he came into possession of the seized money," relevant to Article III standing. That claimant's original description of the source of the currency -- that his "interest in the property originated from legitimate business and personal income" was found insufficient by the New Jersey court to establish standing because it did not "make a *prima facie* showing that claimant exercised 'control or dominion' over the property." Id. The court also found other interrogatories about claimant's criminal record, past employment, sources of income, debts, and liabilities were also relevant to standing and permissible under Rule G(6) and ordered the claimant to provide supplemental answers to interrogatories.[8]

Another recent decision permitted an interrogatory on "[s]pecific instances of your conduct (including dates) which show you exercised dominion and control over the defendant currencies you claim," as relevant to standing. United States v. $65,822.30 in U.S. Currency, 2008 WL 2444441 (E.D. Mich., June 4, 2008). The court determined claimant's answer that he

---

[8] The New Jersey District court found that an interrogatory asking for all of claimant's business and personal transactions involving money from 2002 to present to be over-broad. It found that some of the information could be obtained through other interrogatories and instructed the claimant not to answer. The court also instructed the claimant only to provide information about his living expenses as available.

10

"[s]old property and obtained currency by people paying me cash for property," "conclusory" and struck the claimant's claim. Id.

In another recent case, United States v. $410,000.00 in United States Currency, 2007 WL 4557647 (D.N.J., Dec. 21, 2007), claimants moved to stay a civil forfeiture action, and the government filed a cross-motion to compel claimants' response to its Rule G(6) Special Interrogatories. The court denied claimants' motion and granted the government's motion to compel, finding that claimants failed to "make a *prima facie* showing that they are the colorable owners of the Property . . ." Id. Claimants' assertions that, "'[t]he $410,000.00 in cash seized from Mr. Shamah's vehicle are funds in part belonging to Claimant Wilkes,' and that Claimant Wilkes' 'interest in the property originates from legitimate business and personal income'" was not sufficient to show standing. The court relied upon the Fifth Circuit in United States v. $38,570 U.S. Currency, 950 F. 2d 1108, 1112-13 (5th Cir. 1992), stating, ". . . to establish Article III standing in a civil forfeiture proceeding, claimant must present court with something more than bare assertion of ownership of property at issue; '[o]rdinarily, therefore, a claimant is required to submit some additional evidence of ownership along with his claim in order to establish standing to contest the forfeiture.'"

Here, Ms. Thompson-Joyner suggests that her interest in the defendant currency is based upon her familial relationship with Mr. Thompson and an expired power of attorney. See Document No. 3. The government's interrogatories complied with Rule G(6) and are relevant to exploring Ms. Thompson-Joyner's standing to intervene in the matter (either on her own or on behalf of her deceased brother). As shown above, Interrogatory No. 10, which asks for the source of the defendant currency, goes directly to standing. A claimant must show not only that

11

she has standing to take Mr. Thompson's place in the litigation, but also that Mr. Thompson had standing over the defendant currency. Therefore, disclosing the source of the currency is imperative to establishing Mr. Thompson's interest in the defendant currency.[9] The attachments to her claim do not show that any of the currency found during the search warrant was from a legitimate source. See Document No. 3. Indeed, the Metropolitan Police PD-163 Form and the State Farm Insurance letter only suggest that someone other than Mr. Thompson received a check for $3,084.75 before the search of Mr. Thompson's apartment.[10] Therefore, her bare assertions of an interest in the defendant currency cannot establish her standing to intervene.

Interrogatory No. 9, which asks Ms. Thompson-Joyner to identify whether Mr. Thompson has a spouse or children is, likewise, relevant to Ms. Thompson-Joyner's identity and relationship to the defendant currency because someone other than claimant may have a superior interest in Mr. Thompson estate, negating any effort by Ms. Thompson-Joyner to have the defendant currency given to her.[11] Listing Mr. Thompson's close relatives and their current locations is in no way burdensome.

---

[9] Claimant's motion also vaguely suggests that she may decide to forego answering other interrogatories which she deems outside the scope of Rule G(6), giving as an example Interrogatory No. 1 which requests "state all facts supporting your claim of interest." See Document No. 7, n. 1. Like Interrogatory No. 10, the facts which support her claim or standing to assert and interest are relevant to Article III standing.

[10] The government spoke with Ms. Rolanda Elliot-Washington (and claimant's counsel) about the insurance check and requested that she provide a sworn statement regarding any transactions involving the check as well as her bank documents showing the disbursement of the insurance check. To date, the government was only provided an unsworn statement from Ms. Elliot-Washington asserting that cash from the check was given to Mr. Thompson.

[11] During the August 15, 2008, telephone conversation with claimant's counsel, the undersigned counsel was willing to delay claimant's response to this interrogatory in hopes of coming to an agreement regarding the other interrogatory.

### C.    **Claimant Must Establish Standing to File Motion to Dismiss**

Ms. Thompson-Joyner complains that plaintiff has not responded yet to her motion to dismiss.  <u>See</u> Document No. 7 at p. 2.  That may be true, but it is beside the point.  Accepting Ms. Thompson-Joyner's argument that the dismissal motion should be decided first would permit literally any person to file a motion to dismiss that had to be decided before the movant had shown the right to litigate the point.  This is an open invitation to flooding the Court's docket with piles of motions from individuals who want to claim interests in others' forfeitable property.

Rule G, which was enacted in December 2006, was carefully crafted to require a claimant to establish standing before the Court could consider a motion to dismiss.  Not surprisingly, establishing standing is also the purpose behind the special Rule G(6) interrogatories.  Rule G(8)(b)(i) itself reminds us that only a claimant who has established standing may file such a motion.  It states, "[a] claimant who establishes standing to contest forfeiture, may move to dismiss the action under Rule 12(b)."  Supplemental Rule G(8)(b)(i).  The Rule's drafters recognized that "[t]he government, moreover, need not respond to a claimant's motion to dismiss until 20 days after the claimant has answered any subdivision (6) interrogatories."  Advisory Committee Notes to Rule G, Subdivision (8), Paragraph (b).  Rule G(8)(c) then allows the government to file a motion to strike a claim or answer based upon lack of standing.  The government's motion to strike a claim ". . . must be decided before any motion by the claimant to dismiss the action. . . "  Rule G(8)(c)(ii)(A).  As indicated above, this matter appears ripe for a motion to strike.

Thus, Ms. Thompson-Joyner's suggestion that her motion to dismiss should be considered first by the Court is logically and legally unsupportable.  The Advisory Committee Notes to Rule

G discuss how Rule G was designed to set out a system by which the courts should address the initial filings in civil forfeiture actions.  Because standing is a threshold issue, Rule G allows the government first to ascertain a claimant's standing to be certain she is entitled to intervene in the action.  See Rule G (6).  "Subdivisions (8)(b) and (c) allow a claimant to move *to dismiss only if the claimant has standing*, and recognized the government's right to move to dismiss a claim for lack of standing."  Advisory Committee Notes to Rule G, Subdivision (6) (emphasis added).

### III.    CONCLUSION

WHEREFORE, for the foregoing reasons, the government respectfully requests that the Court deny Ms. Thompson-Joyner's Motion to Stay Discovery on the Merits Pending Resolution of the Motion to Dismiss.

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


\_\_/s/_____
WILLIAM R. COWDEN, D.C. Bar #426301
Assistant United States Attorney


\_\_/s/_____
DIANE G. LUCAS, D.C. Bar # 443610
Assistant United States Attorney
U.S. Attorney's Office
Criminal Division
555 Fourth St., N.W., Rm. 4822
Washington, D.C.  20530
202-514-7912
Diane.Lucas@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of September, 2008, I caused a copy of the foregoing Opposition to Claimant's Motion to Stay Discovery on the Merits Pending Resolution of Motion to Dismiss, and Proposed Order to be served via the Court's electronic filing system to Elizabeth W. Newsom, Esq., and Ann M. Mason, Esq., (counsel for claimant Rita Thompson-Joyner).

_____
DIANE G. LUCAS
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civ. No. 07-cv-02155 (ESH)** |
| | ) | |
| **$9,436.00 IN U.S. CURRENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |
| | ) | |
| **RITA THOMPSON-JOYNER,** | ) | |
| | ) | |
| **Claimant.** | ) | |
| _____ | ) | |

## <u>ORDER</u>

Upon consideration of the claimant's Motion for Stay of Discovery on the Merits Pending Resolution of Motion to Dismiss, the plaintiff's Opposition, and the record herein, it is hereby

ORDERED, that the claimant's motion is DENIED.

IT IS FURTHER ORDERED, that claimant will answer the Rule G(6) Interrogatories propounded to her on or before September 11, 2008.

IT IS FURTHER ORDERED, that plaintiff will have until on or before October 1, 2008 to file a motion to strike claim.

IT IS FURTHER ORDERED, that if no motion to strike claim is filed on or before October 1, 2008, plaintiff's response to claimant's motion to dismiss is due on October 1, 2008.

IT IS FURTHER ORDERED, that if a motion to strike claim is timely filed, plaintiff's response to claimant's motion to dismiss is due on or before twenty days after the Court's ruling on the motion to strike claim.

Dated this ___ day of _____, 2008.

_____
ELLEN SEGAL HUVELLE
United States District Judge

2